**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT A. HULL, | : | Civil No. 1:12-CV-203 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | ( Judge Conner) |
| | : | |
| UNKNOWN AND KNOWN | : | |
| MEMBERS OF THE U.S. | : | (Magistrate Judge Carlson) |
| GOVERNMENT, et al., | : | |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

I.    **Statement of Facts and of The Case**

This is a *pro se* civil rights case that was first brought by Robert Hull, a former

federal prisoner, on February 2, 2012, through the filing of a document styled as an

"Emergency Motion for Relief from Conspiracies." (Doc. 1.)  In this pleading, Hull

cast a wide, but wholly undefined, net in terms of the defendants he wished to sue,

naming as defendants: "Unknown and known... members of the U.S. Government,

Members of the U.S. Bureau of Prisons, Members of FCI Schuylkill staff, Members

of the U.S. Probation office."  (Id.)  Hull's initial pleading then contained a confused

and confusing 25-page narrative. (Id.)

Some aspects of this narrative were intelligible, but largely undefined, such as

Hull's complaint that unidentified persons have not adequately treated a medical

condition he was experiencing, MRSA. (Id.)  Many other aspects of the complaint, however, consisted of matters which were wholly unintelligible.  For example, a recurring thread in this document related to Hull's parental responsibilities, and a sexual assault that was allegedly committed upon his daughter.  None of these events were linked in any understandable way to the U.S. Government.  Hull's complaint then alluded vaguely to threats against his safety that he perceived in the past, while also seemingly anticipating future conspiracies against the plaintiff, warning that unidentified conspirators "will be depriving him of" health care, emotional security, and access to the courts in the future.  (Id., pp. 1-2.)  Thus, Hull's complaint sought to have the court both remedy past wrongs, and somehow control future events.

Hull also engaged in an extended exegesis protesting what he describes as efforts by unknown persons to compel him to travel to or reside in New Jersey, an event that Hull alleges would be profoundly traumatizing.  Hull's complaint predicted dire consequences which would flow from his mere presence in New Jersey.  As Hull alleged:  "The massive emotional and financial burden that release in N.J. would impose, when combined with the current level of emotional distress he and his child and family are suffering, . . . would create and cause such severe reactions in his daughter as to put her life at risk, and . . . would have far reaching effects on plaintiff,

most notably profound depression, which he is particularly susceptible to." (Id., p.18.)

Hull's complaint then sought relief which included damages but was primarily injunctive in nature, requesting orders: "preventing release in N.J., . . . , halting obstruction of justice, . . . , compelling adequate medical care, . . . , compelling release in Florida, . . . , [and an] order of protection from retribution by officials." (Id., p. 22.) The largely injunctive nature of this lawsuit is then further underscored by Hull's motion to compel reasonably safe environment, (Doc. 22.), which urged the court to enjoin "the abusively permissive atmosphere . . . , that exists in and pervades the B.O.P. generally . . . [and] allows encourages and conducts discrimination, error, abuse and substantial harm to certain types or classes of inmates that is illegal, immoral and dishonorable." (Doc. 23, p. 2.)

At the time that he filed this complaint, Hull also presented the district court with some separate and immediate medical concerns, which the court addressed. Consequently, the district court did not have an opportunity to fully screen and evaluate the overall merits of this complaint. Moreover, with respect to much of the injunctive relief sought by Hull in this complaint, it is apparent that events have swiftly overtaken this pleading, since Hull was released from federal custody and moved to Florida by mid-March, 2012. (Docs. 29 and 31.)

Recognizing that a screening review had never been performed upon this *pro se* complaint, the district court has directed this court to engage in such a screening analysis.  (Doc. 37.)  Upon a screening review of this complaint, it is recommended that the plaintiff's motions for leave to proceed *in forma pauperis* be granted, (Docs. 2 and 3.), but that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.  It is further recommended that the plaintiff's motion for summary judgment and motion to compel reasonably safe environment, (Docs. 7 and 22.) also be denied.

## II.   **Discussion**

### A.   **Screening of *Pro Se In forma Pauperis* Complaints–Standard of Review**

This court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when

considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal  conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient

to  show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it identify the defendants sued with sufficient clarity to allow a case to proceed forward.  This fundamental requirement is driven both by matters of principle, and by pragmatic considerations.  First, as a matter of principle, proper identification of defendants is essential because Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). It is, therefore, simply impossible to properly assign individual responsibility to particular defendants who are identified in some completely amorphous fashion. Moreover, as a practical matter, the court cannot effect service of process upon persons who are wholly unidentified.  Without proper service, a lawsuit cannot proceed.  Therefore, it is incumbent upon a plaintiff to inform the court who he seeks to sue, and when a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims.  See, e.g., Radin v. Jersey City Medical Center, 375 F. App'x

205 (3d Cir. 2010); <u>Earnest v. Ling</u>, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complain fails to clearly identify which parties [the plaintiff] seeks to sue.")  Indeed, where a plaintiff has been unable to identify the actual parties he wishes to sue by name, the proper exercise of this court's broad discretion in these matters would call for the dismissal of these currently unnamed parties.  <u>See</u> <u>Blakeslee v. Clinton County</u>, 336 F. App'x 248 (3d Cir.2009) (affirming dismissal of fictitious defendants after ten months of litigation). <u>Ball v. Bower</u>, 1:10-CV-2561, 2011 WL 6782621 (M.D. Pa. Oct. 13, 2011) <u>report and recommendation adopted,</u> 1:10-CV-2561, 2011 WL 6782428 (M.D. Pa. Dec. 21, 2011).

### B.   Hull's Release from Custody Renders Moot His Request For Injunctive Relief from Prison Officials

These principles control here and compel dismissal of Hull's complaint in its current form.  At the outset, we find that Hull's release from custody renders moot his current requests for injunctive relief from the defendants, officials who formerly oversaw the conditions of Hull's imprisonment.

The mootness doctrine recognizes a fundamental truth in litigation:  "[i]f developments occur during the course of  adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." <u>Blanciak v. Allegheny Ludlum</u>

Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).  There is a constitutional dimension to the

mootness doctrine, which limits the ability of federal courts to entertain matters.

> Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. (citing Allen v. Wright, 468 U.S. 737, 750-751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471-473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis, 494 U.S. at 477-478, 110 S.Ct. 1249. "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " Spencer, 523 U.S. at 7, 118 S.Ct. 978 (quoting Lewis, 494 U.S. at 477, 110 S.Ct. 1249).

Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir. 2009).

In this case, Hull repeatedly sought to enjoin prison officials to provide him with a

wide-ranging, but largely amorphous, forms of injunctive relief while he was in

prison, yet it is entirely undisputed that Hull is no longer in the defendants' custody

and, therefore, no longer receives these services from the defendants.

This simple fact raises a threshold, and insurmountable, obstacle to Hull's claims for injunctive relief at a prison where he is no longer incarcerated.  We conclude that Hull's release renders his motions and requests for injunctive relief moot, and these motions and requests should be denied.  In this setting, the United States Court of Appeals for the Third Circuit has aptly observed that, when addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates' claims are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotations omitted); see also Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir.1993). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Abdul-Akbar, 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003).  See Griffin v. Beard, No. 09-4404, 2010 WL 4642961 (3d Cir. Nov. 17, 2010)(transfer from SCI Huntingdon renders inmate injunctive relief claim moot).  Indeed, as this court has previously observed, in a case such as this, where an inmate seeks injunctive relief against his jailers but is no longer housed at the prison where these injunctive claims arose:

> [H]is request[] to enjoin the defendants from interfering with his [rights] is academic. See Muslim v. Frame, 854 F.Supp. 1215, 1222 (E.D.Pa.1994). In other words, [the prisoner-plaintiff's] transfer to

another institution moots any claims for injunctive or declaratory relief.
See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3rd Cir.1993);
Weaver v. Wilcox, 650 F.2d 22, 27 (3rd Cir.1981).

Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa.1998).

These principles control here, and compel denial of all of the various prayers for injunctive relief articulated by Hull as moot since Hull is no longer housed in federal custody.

### C. Hull's Complaint–Which Fails to Identify Defendants, Fails to Articulate Comprehensible Legal Claims, and Joins Seemingly Unrelated Events–Violates Rules 8 and 20 of the Federal Rules of Civil Procedure

Furthermore, as presently drafted Hull's complaint violates the basic rule of pleading which requires that "a District Court . . . determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11. In addition, dismissal of this complaint is also warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

Dismissal of this complaint is appropriate for several reasons. First, the complaint, which seeks to sue "Unknown and known... members of the U.S. Government, Members of the U.S. Bureau of Prisons, Members of FCI Schuylkill staff, Members of the U.S. Probation office," simply fails to meet the first requisite of a proper pleading. It fails to clearly name any identifiable defendants. When a "complaint fails to clearly identify which parties [the plaintiff] seeks to sue," Earnest v. Ling, 140 F.App'x 431 (3d Cir. 2005), the proper exercise of this court's broad discretion in these matters calls for the dismissal of these currently unnamed parties. See, e.g., Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Blakeslee v. Clinton County, 336 F. App'x 248 (3d Cir.2009) (affirming dismissal of fictitious defendants after ten months of litigation). Ball v. Bower, 1:10-CV-2561, 2011 WL 6782621 (M.D. Pa. Oct. 13, 2011) report and recommendation adopted, 1:10-CV-2561, 2011 WL 6782428 (M.D. Pa. Dec. 21, 2011).

Moreover, it is also well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible,"

Stephanatos v. Cohen,  236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8  is clearly appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra;  Scibelli v. Lebanon County, supra;  Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response.  Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).[1]

Here, we find that Hull's complaint is largely indecipherable, and consists of averments which are wholly unintelligible, including Hull's discussion of his parental responsibilities, and a sexual assault that was allegedly committed upon his daughter, events which are not linked in any understandable way to the U.S. Government. Hull's complaint then alludes vaguely to threats against his safety that he perceived

---

[1] In the first instance Rule 8 dismissals are often entered without prejudice to allowing the litigant the opportunity to amend and cure any defects. In such instances, the failure to timely submit a proper amended complaint that complies with the strictures of Rule 8 may then warrant the dismissal of the complaint with prejudice. See, e.g., Mincy v. Klem, 303 F.App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F.App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra;  Scibelli v. Lebanon County, supra;

in the past, while also seemingly anticipating future conspiracies against the plaintiff, warning that unidentified conspirators "will be depriving him of" health care, emotional security, and access to the courts in the future. (Id., pp. 1-2.) Finally, much of Hull's pleading focuses on his apparent fear of the state of New Jersey with Hull protesting what he describes as efforts by unknown persons to compel him to travel to or reside in New Jersey, an event that Hull alleges would be profoundly traumatizing since: "The massive emotional and financial burden that release in N.J. would impose, when combined with the current level of emotional distress he and his child and family are suffering, . . . would create and cause such severe reactions in his daughter as to put her life at risk, and . . . would have far reaching effects on plaintiff, most notably profound depression, which he is particularly susceptible to." (Id., p.18.)

Without further coherence and clarity on Hull's part, the defendants simply could not reasonably be expected to respond to this odd array of averments and would be "left [to] . . . having to guess what of the many things discussed constituted [a cause of action]." Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011). Therefore, in these circumstances, Rule 8 calls for the dismissal of this complaint in its current form.

Moreover, Hull's complaint appears to combine and conflate events which have no legal, logical, topical or temporal connection into a single lawsuit. Thus, this

complaint collects a series of distinct claims, involving diverse parties, and disparate acts which are alleged to have occurred at different times. The joinder of these plainly divergent claims in a single lawsuit is inappropriate under the rules governing joinder of defendants in federal litigation. Those rules provide, in part, that:

> Person[s] . . . may be joined in one action as defendants if:
>
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of *the same transaction, occurrence, or series of transactions or occurrences*; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

> Fed. R.Civ. P. 20(a)(2)(emphasis added).

In this case, it cannot be said from Hull's complaint that these allegations arise out of the same transaction, occurrence or series of transactions or occurrences. Quite the contrary, the complaint seems to amass an array disparate acts, allegedly committed by different unnamed actors at divergent times and places. "[G]iven the hodgepodge of claims raised in the . . .complaint," Boretsky v. Governor of New Jersey, No.08-3313, 2011 WL 2036440, *3 (3d Cir. May 25, 2011), this court should, in the exercise of its discretion, dismiss this complaint, and require Hull to file separate complaints relating to these factually distinct claims. (Id.)

### D.   The Plaintiff's Claim for a Specified Sum of Unliquidated Damages Should be Stricken

Further, we note that the court should also strike the various claims for specific sums of unliquidated damages from this *pro se* complaint.  In this regard, Rule 12(f) of the Federal Rules of Civil Procedure imposes a duty on the court to review pleadings and provides that the court may upon its own initiative at any time order stricken from any pleading any immaterial matter.  Fed. R. Civ. P. 12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance.  Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984).   In this case, the plaintiffs' various claims for specified amounts of unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular amounts of unliquidated damages, these specific dollar claims should be stricken

-18-

from the complaint without prejudice to the plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that Hull be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motions for leave to proceed *in forma pauperis* be GRANTED, (Docs. 2 and 3), but that the plaintiff's complaint be dismissed without prejudice to providing the plaintiff one final opportunity to endeavor to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

IT IS FURTHER RECOMMENDED that the plaintiff's motion for summary judgment and motion to compel reasonably safe environment (Docs. 7 and 22.) also be DISMISSED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of

that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 16th day of August 2012.


***S/Martin C.  Carlson***
Martin C. Carlson
United States Magistrate Judge